IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Dwayne Jackson,                          ) | C/A No. 0:12-2572-RBH-PJG |
|                                          ) | |
|       Plaintiff,     ) | |
|                                          ) | |
| v.                                       ) | **REPORT AND RECOMMENDATION** |
|                                          ) | |
| Carolyn W. Colvin, Acting Commissioner   ) | |
| of Social Security,[1]                   ) | |
|                                          ) | |
|       Defendant.     ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Dwayne Jackson ("Jackson"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

In April 2008, Jackson applied for DIB and SSI, alleging disability beginning February 14, 2008. Jackson's applications were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on October 26, 2010, at which Jackson, who was represented by Nowell S. Lesser, Esquire, appeared and testified. The ALJ

_____

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



issued a decision on November 5, 2010 denying benefits and concluding that Jackson was not disabled. (Tr. 28-37.)

Jackson was born in 1970 and was thirty-seven years old at the time of his alleged disability onset date. (Tr. 181.) He has a tenth grade education and past relevant work experience as a dye machine operator, light installer, construction laborer, floor person at a poultry plant, and a housekeeper. (Tr. 187, 190, 192.) In his application, Jackson alleged disability since February 14, 2008 due to his back, neck, and numbness in both hands. (Tr. 186.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since February 14, 2008, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

   \*   \*   \*

3. The claimant has the following severe impairment: degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

   \*   \*   \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   \*   \*   \*

5. . . . [T]he claimant has the residual functional capacity to perform work as defined in 20 CFR 404.1567(b) and 416.967(b) except: no lifting and/or carrying over 20 pounds occasionally and 10 pounds frequently; no more than frequent use of the hands for any manipulative activity; and only occasional climbing of ropes, ladders, and scaffolds.

   \*   \*   \*

6. The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

   \*   \*   \*



  7.  The claimant has not been under a disability, as defined in the Social Security Act, from February 14, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 30-37.) Jackson submitted additional evidence to the Appeals Council, which denied his request for review on July 6, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

  (1) whether the claimant is engaged in substantial gainful activity;

  (2) whether the claimant has a "severe" impairment;

  (3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

  (4) whether the claimant can perform his past relevant work; and

  (5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.  Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Jackson raises the following issues for this judicial review:

I. The Administrative Law Judge (ALJ) erred in finding that Plaintiff's bipolar disorder and schizoaffective disorder are non-severe impairments.

II. The ALJ failed to fully develop the record by refusing to order an updated consultative examination when an MRI performed after the two prior examinations revealed that Plaintiff had a herniated disc in his cervical spine.

III. The ALJ erred in finding that Plaintiff is capable of performing his past relevant work as a housekeeper.

IV. The ALJ did not comply with the provisions of Social Security Ruling 82-62 in his asses[s]ment of Plaintiff's past relevant work.

V. The Appeals Council erred in failing to consider the new and material evidence provided through the reports from Theodore T. Faber, MD, including positive findings from Plaintiff's EMG testing.

(Pl.'s Br., ECF No. 22.)

## DISCUSSION

**A.     Severe Impairments**

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The claimant



bears the burden at this step to show that he has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs."  Examples of these include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).  "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original) (internal quotation marks omitted).

At Step Two, the ALJ found that Jackson's degenerative disc disease constituted a severe impairment.  The ALJ also considered Jackson's bipolar disorder and schizoaffective disorder and found them to be non-severe impairments, which Jackson argues was error.  In finding that Jackson's bipolar disorder and schizoaffective disorder were non-severe impairments, the ALJ found that, "singly or in combination, [they] do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (Tr. 30-31.)  The ALJ found that Jackson has no limitation

in his activities of daily living; social functioning; or concentration, persistence, or pace, and he has no episodes of decompensation of an extended duration.

In support of his allegations of error, Jackson points to his testimony that he is experiencing "deep depression"; medical records from Santee-Wateree Community Health demonstrating a diagnosis of depression and schizoaffective disorder during his year of treatment there; and assessments of GAF scores of 50[3] on numerous occasions. Additionally, in his reply brief Jackson relies on records from his inpatient hospital stay at G. Werber Bryan Psychiatric Hospital that include a diagnosis of bipolar disorder. However, the mere presence or diagnosis of a mental condition is insufficient to meet Jackson's burden at Step Two; rather, he must show how it significantly limits his mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c); Bowen, 482 U.S. at 146 n.5; see also Washington v. Astrue, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) ("Plaintiff's medical records establish the existence of her impairment, but the current record contains no evidence of how it significantly limits her physical or mental ability to do basic work activities."). In the opinion, the ALJ acknowledged and discussed the medical records that Jackson relies upon. Although Jackson argues that the ALJ should have discussed his low GAFs scores, the

---

[3] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. Id. at 32-33; see also Parker v. Astrue, 664 F. Supp. 2d 544, 557 (D.S.C. 2009) (stating that "Plaintiff's GAF score is only a snapshot in time, and not indicative of Plaintiff's long term level of functioning"). According to the DSM-IV, a GAF score between 41 and 50 may reflect "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 34. However, the court observes that the fifth edition of the DSM, published in 2013, has discontinued use of the GAF. American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) ("DSM-V").



court observes that as noted above, GAFs are only a snapshot in time, and beginning in 2013, DSM-V discontinued their use. Moreover, this factor alone does not render the ALJ's opinion unsupported in light of the many other facts he discussed in support of his conclusion. See, e.g., Mitchell v. Astrue, C/A No. 2:11-56-MR, 2013 WL 678068, at *8 (W.D.N.C. Feb. 25, 2013) (rejecting a plaintiff's arguments that the ALJ erred at Step Two, stating that "[t]he failure to reference a GAF score is not, standing alone, however, a sufficient ground to reverse a disability determination" and finding that "[t]his is particularly true . . . where the ALJ fully evaluated the records and treatment notes upon which the GAF scores were based") (internal quotation marks and citations omitted) (alterations in original). Specifically, the ALJ stated:

> The claimant presented for an initial assessment on December 11, 2009, at Santee-Wateree Mental Health Center with complaints of depression, anxiety, problems with sleep, and audio and visual hallucinations (talks to self and answers back), and reported that these problems had started in 1991 after his mother's death. He related that he did not know how to talk to people and was not sure if he was afraid or what, and that he usually stayed to himself usually sitting in the room in the dark. He related that he had been hospitalized at Richland Springs in 2005, Morris Village in September 2009, and at G. We[r]ber Bryan in October 2009 due to attempted suicide. He also indicated that he last used powdered cocaine in September 2009, and used about a dime bag per week since age 20. The records noted that the claimant reported that he attended church, currently lived with a girlfriend (together 13 years), and that he had been arrested five times for driving under suspension. The claimant was neat, clean, pleasant, and cooperative with appropriate motor activity, appropriate affect, normal speech and hopeless mood. The claimant reported on follow-up on December 30, 2009, that he was depressed and hearing voices telling him to do bad stuff. Follow-up on January 28, 2010, noted that the claimant reported that he could not get his medication and that he did not go see the National Direct technician as instructed. He reported on March 11, 2010, that he was still hearing voices and on April 29, 2010, he stated that the medication was working well and he was more relaxed but he was still hearing voices. Assessment was schizoaffective disorder (Exhibit 12F).
> The claimant was hospitalized on June 3 through June 18, 2010, at G. Werber Bryan Psychiatric Hospital due to suicidal ideation and auditory hallucinations. The records noted that the claimant had had a recent diagnosis of bipolar disorder versus schizophrenia and he had been admitted to Tuomey Medical Center on May 18,



>   2010.  The records noted that the claimant reported auditory hallucinations on an intermittent basis since his early 20's but had not disclosed this to others until the past year.  The physician noted that when the claimant was observed outside of the treatment team, the claimant's behavior was noticeably different.  He was generally upbeat and talkative with others and demanding with staff, he was occasionally loud and intrusive with other patients, he was noted to be really familiar with some female peers, and his thought process appeared organized throughout.  When observed by the treatment team he would become morose in affect and would express depressed mood; he felt that his primary problem with his inability to communicate with his family and that this had led to him being isolative and more depressed.  The claimant had no evidence of suicidality or psychosis from an objective basis throughout his hospitalization and during the time of his hearing when he reported these symptoms.  It was also noted that the claimant did report an ongoing disability application in process during his hospital stay.  Discharge diagnoses included history of bipolar disorder, most recent episode depressed with psychotic features; cocaine dependence; and rule out for Malingering.  Psychiatrist Dr. Alexander McDonald stated that close observation and scrutiny should be given to the possibility of secondary gain in the claimant's presentation (Exhibit 13F).

(Tr. 33-34.)  In light of this, the court finds that it is clear the ALJ considered the evidence of Jackson's mental impairments; however, he found that they did not result in any functional limitations.  Based on the foregoing, Jackson has failed to demonstrate that this determination by the ALJ is unsupported by substantial evidence or controlled by an error of applicable law.  See 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas [*i.e.*, daily activities, social functioning, concentration] as "none" or "mild" and "none" in the fourth area [episodes of decompensation], we will generally conclude your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

**B.    Consultative Examination**

Jackson next alleges that the ALJ erred in failing to fully develop the record by denying his request for an updated consultative examination.  Jackson argues that although two consultative



examinations had been performed, the ALJ should have ordered a third examination based on a 2009 MRI, which was performed after the two prior examinations, that revealed that Jackson had a herniated disc in his cervical spine.

The decision on whether to order a consultative examination is within the discretion of the ALJ.  See Singleton v. Barnhart, 399 F. Supp. 2d 686, 690 (D.S.C. 2005); Bishop v. Barnhart, 78 F. App'x 265, 268 (4th Cir. 2003); see also Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 5 (1st Cir. 1987).  A consultative examination may be obtained "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the Commissioner] to make a determination or decision on [the] claim."  20 C.F.R. §§ 404.1519a(b), 416.919a(b).  As fully discussed by the Commissioner, Jackson has failed to demonstrate that the ALJ erred in the exercise of his discretion.  (See Def.'s Br. at 8-12, ECF No. 32 at 8-12.)

Physical consultative examinations were performed in June 2008 by Dr. Dell Sweatt (Tr. 296-301) and in January 2009 by Dr. Eric Byrd (Tr. 311-13).  Both doctors found that Jackson had some neck pain, but suggested that Jackson had not been putting forth full effort during testing and may have been exaggerating some of his pain, particularly with regard to his alleged lower back pain.  (Tr. 299-300, 313).  Notably, Dr. Sweatt indicated that Jackson appeared to put forth a poor effort when demonstrating a heel-and-toe walk and a tandem gait because when Dr. Sweatt told Jackson that he should be able to do better if he tried harder, Jackson was able to tandem-walk "satisfactorily."  (Tr. 300.)  Dr. Sweatt also observed that Jackson had full range of motion in both upper and lower extremities but demonstrated limited strength in his shoulders, arms, hands, and legs, which Dr. Sweatt found inconsistent with Plaintiff's "obviously muscular," "body-builder"-like appearance.  Dr. Sweatt indicated that if Jackson was as physically limited and inactive as he alleged,

he would not have retained so much muscle mass. (Tr. 299, 301.) Dr. Byrd similarly observed Jackson's "well developed musculature," and was suspicious of Jackson's effort during the grip strength test when Dr. Byrd could "barely feel" Plaintiff's grip in his hands. (Tr. 313.) Dr. Byrd noted that Jackson had a straight spine with no muscle atrophy, full range of motion in his lower extremities, and that Jackson's 2003 spine X-ray was "totally normal" notwithstanding affecting bending limitations purportedly due to lower back pain. (Tr. 313.)

The ALJ gave great weight to the state agency reviewers, who relied in part on these consultative examinations in rendering their opinions, in assessing Jackson's residual functional capacity. (Tr. 34-36, 303-09, 335-41.) Jackson appears to argue that the ALJ erred in relying on these opinions because neither the consultative examiners nor the state agency reviewers had the January 2009 MRI of Jackson's cervical spine. This MRI included findings of a "moderate to large size central to left paracentral herniation [at C4-5] which appears to efface and mildly flatten the anterior cord", resulting "in mild to moderate degree of central canal narrowing", and of "minimal bulge-osteophyte complex with inability to exclude a very small central protrusive element or osteophyte complex that appears to efface the central cord" at C6-7. (Tr. 343.) Specifically, Jackson argues that there was conflicting and ambiguous evidence of the nature and extent of Jackson's cervical spine impairment, asserting that the consultative examiners questioned the validity of Jackson's subjective complaints while the MRI establishes an objective basis for his allegations of limitations, such as looking up and down. Jackson also argues that it is "highly unlikely that the two consulting physicians would have questioned the legitimacy of Mr. Jackson's complaints of neck pain and his effort during range of motion testing if they were aware he had a herniated disc and was being referred to a neurosurgeon for further evaluation of his condition." (Pl.'s Br. at 17, ECF No.



22 at 17.) Therefore, Jackson argues that the ALJ had a duty to order another consultative examination to resolve this conflict.

The court observes that the 2009 MRI of his lumbar spine was "essentially negative" for any abnormalities. (Tr. 345.) The consultative examiners credited that Jackson had some cervical (neck) pain, focusing their suspicions regarding Jackson's alleged lower (lumbar) back pain. Moreover, the ALJ expressly considered Jackson's 2009 MRI results in assessing his residual functional capacity. (Tr. 33, 36.) Specifically, the ALJ observed that the cervical MRI resulted in abnormal findings and that Jackson's subsequent treatment notes indicated increase his pain medication dosages and recommendation that Jackson follow up with a neurologist—a recommendation that had existed since December 2008 but Jackson indicated he was unable to afford. (Tr. 33; see Tr. 353-58.) Accordingly, based on the foregoing, the court finds that Jackson has failed to demonstrate that the ALJ erred in exercising his discretion to decline to order a third consultative examination.

**C.     Past Relevant Work**

Jackson's next two arguments concern the ALJ's determination that Jackson is not disabled because he is able to perform his past relevant work as a housekeeper as it is actually and generally performed. As stated above, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. "Past relevant work" is defined by the regulations as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1); see also 20 C.F.R. §§ 404.1574; 416.974 (discussing substantial gainful activity). In determining whether a claimant can perform his past relevant work, the Commissioner " will ask [the claimant] for information about work you have done in the past" and "may also ask other people



who know about your work" and "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence [he] need[s] to help [him] determine whether [a claimant] can do [his] past relevant work, given [his] residual functional capacity." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). Further, a claimant is generally not disabled if he can return to his past relevant work as he performed it or as it is customarily performed throughout the economy. Id.; SSR 82-61, 1982 WL 31387.

Jackson first argues that the ALJ's finding that he has past relevant as a housekeeper is "questionable at best" and appears to argue that it also unclear whether his prior jobs constituted substantial gainful activity. The court finds these speculative arguments do not demonstrate that the ALJ's finding that Jackson had past relevant work as a housekeeper was unsupported. As an initial matter, Jackson did not challenge the vocational expert's testimony that, after reviewing Jackson's work background, the documents in the file, and the hearing testimony, Jackson's past relevant work included housekeeper. Moreover, the record demonstrates that Jackson described his work history in the past fifteen years as including jobs of housekeeper, houseman, and maintenance housekeeper with responsibilities that included cleaning, making beds, and transporting laundry. (Tr. 20-21, 192, 197-98.) Jackson indicated that each of these jobs were performed for at least six months and indicated they were performed for at least forty hours per week.

Jackson also challenges the ALJ's determination that he could perform his past relevant work as a housekeeper as he actually performed it, arguing that such a finding is inconsistent with his residual functional capacity in light of his statements that he frequently lifted at least twenty-five pounds. To the extent that this finding was error, the court finds it was harmless as the ALJ also



found that Jackson could perform the job as it is generally performed.  See 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); SSR 82-61, 1982 WL 31387 (all providing that a claimant is generally not disabled if he can return to his past relevant work as he performed it *or* as it is customarily performed throughout the economy).

Finally, Jackson argues that the ALJ's determination fails to contain the specificity required by SSR 82-62.  Social Security Ruling 82-62 provides:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
> 1.   A finding of fact as to the individual's [residual functional capacity].
> 2.   A finding of fact as to the physical and mental demands of the past job/occupation.
> 3.   A finding of fact that the individual's [residual functional capacity] would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *4.  Jackson argues that the ALJ did not make the necessary findings with regard to the second requirement.  However, the ALJ referenced the vocational expert's testimony classifying Jackson's past relevant work as a "housekeeper, DOT 323.687-014 as unskilled, light work with an SVP of 2." (Tr. 37.)  The ALJ further found that the vocational expert testified that an individual with Jackson's residual functional could perform this work and that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles.  In light of the applicable regulations and precedent, Jackson has failed to demonstrate that this reliance was insufficient to satisfy SSR 82-62.[4]  See 20 C.F.R. §§ 404.1560, 416.960; DeLoache v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983) (providing that the Commissioner may rely on the general job

---

[4] To the extent that Jackson argues that the ALJ erred because he failed to account for alleged mental limitations that could preclude performance of this job, as discussed above, Jackson has failed to demonstrate that the ALJ erred in finding that he did not have any such limitations.



categories of the Dictionary of Occupational Titles as presumptively applicable to the claimant's past relevant work).

**D.     Appeals Council**

Finally, Jackson argues that the Appeals Council erred in failing to weigh new and material evidence submitted to it after the ALJ's decision. Specifically, Jackson focuses on reports from Dr. Theodore T. Faber dated January 9, 2012 through February 17, 2012. (Tr. 47-53.) Jackson argues that the evidence is significant because the reports show that EMG testing for Jackson indicated positive for abnormal findings compatible with right C6 radiculopathy and a referral to a spine surgeon. (Tr. 53.)

The Appeals Council acknowledged this additional evidence. However, the Appeals Council found that Jackson's reasons for disagreeing with the ALJ's decision did not provide a basis for changing the ALJ's decision. Further, the Appeal Council stated the following:

> We also looked at a neurology examination from University Specialty clinics dated January 9, 2012, that your attorney submitted with your request for review. The Administrative Law Judge decided your case through November 5, 2010. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before November 5, 2010.

(Tr. 2.)

The law provides that evidence submitted to the Appeals Council with the request for review must be considered in deciding whether to grant review " 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.' " Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (*en banc*) (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is new "if it is not duplicative or cumulative." Id. at 96. "Evidence is material if there is a reasonable possibility that the new



evidence would have changed the outcome." Id. When a claimant seeks to present new evidence to the Appeals Council, he is not required to show good cause for failing to present the evidence earlier. Id. at 96 n.3; cf. 20 C.F.R. §§ 404.970(b), 416.970(b).

Here, the court finds that Jackson has failed to demonstrate that remand is warranted on this basis. Jackson argues that Dr. Faber's report indicates that it relates back to the relevant time period because he mentions that Jackson was referred to him because of neck pain dating back to 2005 and because he considered the 2012 nerve conduction test results in light of the 2009 MRI findings. These two statements do not indicate that the Appeals Council erred in finding these reports were not material and did not relate to the period on or before the date of the ALJ's decision. See Wilkins, 953 F.2d at 95-96. Additionally, Dr. Faber's reports suggest no additional limitations.

## RECOMMENDATION

For the foregoing reasons, the court finds that Jackson has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 18, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).