IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Dwayne Jackson, ) | Civil Action No.: 0:12-cv-2572-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court after the issuance of the Report and Recommendation ("R & R") of United States Magistrate Paige J. Gossett.[2] Plaintiff Dwayne Jackson ("Plaintiff" or "Jackson") brought this action pursuant to 42 U.S.C. §405(g), to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). In her R & R, the Magistrate Judge recommends affirming the decision of the Commissioner.

**FACTUAL FINDINGS AND PROCEDURAL HISTORY**

The Plaintiff filed an application for DIB and SSI in April 2008, alleging a disability onset date of February 14, 2008. (R. pp. 160–69.) After his application was denied initially and on reconsideration, he requested a hearing before an administrative law judge ("ALJ"). The hearing before the ALJ was held on October 26, 2010, and Jackson was represented at the hearing by Nowell S. Lesser, esq. (R. pp. 54–90.) The ALJ issued an unfavorable decision on November 5,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this lawsuit.

[2] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to the Magistrate Judge for pretrial handling.

2010.  (R. pp. 25–37.)  Jackson submitted additional evidence to the Appeals Council, but the Appeals Council denied his request for review of the ALJ's decision, making the ALJ decision the Commissioner's "final decision" for purposes of judicial review.  *See* 42 U.S.C. §405(g); 20 C.F.R. §404.981 (2003).  The ALJ's overall findings were as follows:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.
> 
> 2. The claimant has not engaged in substantial gainful activity since February 14, 2008, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).
> 
> 3. The claimant has the following severe impairment: degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).
> 
> . . .
> 
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
> 
> . . .
> 
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform work as defined in 20 CFR 404.1567(b) and 416.967(b) except: no lifting and/or carrying over 20 pounds occasionally and 10 pounds frequently; no more than frequent use of the hands for any manipulative activity; and only occasional climbing of ropes, ladders, and scaffolds.
> 
> . . .
> 
> 6. The claimant is capable of performing past relevant work as a housekeeper.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
> 
> . . .

> 7. The claimant has not been under a disability, as defined in the Social Security Act, from February 14, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(R. pp. 25–37.)

The ALJ's finding became the final decision of the Commissioner when the Appeal's Council denied Plaintiff's request for further review. *See* (R. pp. 1–4.) On September 6, 2012, Plaintiff filed this action seeking judicial review of the Commissioner's decision. *See* Compl., ECF No. 1. Both Plaintiff and the Commissioner filed briefs, *see* ECF Nos. 22, 32, 37, and the Magistrate Judge issued her Report and Recommendation on February 18, 2014. *See* R & R, ECF No. 39. Plaintiff timely filed objections to the R & R on March 7, 2014. *See* Pl.'s Objs., ECF No. 40. Defendant replied to the objections on March 24, 2014. *See* Reply, ECF No. 41.

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of the Act provides: "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964); *see also Daniel v. Gardner*, 404 F.2d 889, 890 n.1 (4th Cir. 1968); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Tyler v. Weinberger*, 409 F. Supp. 776, 784 (E.D. Va. 1976) (same). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is '"substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

This standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *See, e.g.*, *Vitek v. Finch*, 438 F.2d 1157, 1157–58

3

(4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. *See Meyers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980). "[T]he court [must] uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (citations omitted). As the Fourth Circuit has explained, "[f]rom this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58 (citations omitted).

Furthermore, a *de novo* review is conducted of the Magistrate Judge's R & R. 28 U.S.C. 636(b)(1). The Magistrate Judge makes only a recommendation to the Court and has no presumptive weight; indeed, the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the [M]agistrate's proposed findings and recommendations." *Orpiano v.*

*Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### DETERMINATION OF DISABILITY

Under the Act, Plaintiff's eligibility for the benefits he is seeking hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). A claimant may establish a *prima facie* case of disability based solely upon medical evidence by demonstrating that his impairments meet or medically equal the listed impairments set forth in Appendix 1 of Subpart P. 20 C.F.R. § 404.1520(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. § 404.1560(b). These factors include the claimant's (1) "residual functional capacity," *id.* § 404.1560; (2) age, *id.* § 404.1563; (3) education, *id.* § 404.1564; (4) work experience, *id.* § 404.1565; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, *id.* § 404.1560. If the assessment of the claimant's residual functional capacity leads to the conclusion that he can no

longer perform his previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. *Id.* § 404.1560. The interrelation between these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. § 404.1520, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether he suffers from some physical or mental impairment, (3) whether that impairment meets or medically equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents him from returning to his previous work, and (5) whether the impairment prevents him from performing some other available work.

## DISCUSSION

The Magistrate Judge recommends affirming the decision of the Commissioner, finding that the decision was supported by substantial evidence, and finding that the decision was not reached through application of an incorrect legal standard. *See* ECF No. 39 at 16. Specifically, the Magistrate Judge concludes: (1) the ALJ did not err in finding that Plaintiff's bipolar disorder and schizoaffective disorder are non-severe impairments; (2) the ALJ did not err in exercising his discretion to decline to order a third consultative exam; (3) the ALJ did not err in determining that Plaintiff is able to perform past relevant work as a housekeeper as it is actually and generally performed, and his determination of past relevant work met the specificity required by Social Security Ruling ("SSR") 82-62; and (4) the Appeals Council did not err in finding that Plaintiff's new evidence was not material and did not relate to the period on or before the date of the ALJ's decision. *See id.* at 5–16.

Plaintiff objects to the Magistrate Judge's recommendations. First, he objects to the Magistrate Judge's determination that the ALJ did not err in finding that his bipolar disorder and schizoaffective disorder were not severe impairments. *See* ECF No. 40, at 2–4. Next, Plaintiff

objects to the Magistrate Judge's recommended finding that the ALJ properly exercised his discretion in refusing to order an updated consultative examination. *See id.* at 4–6. Plaintiff then objects to the Magistrate Judge's determination that the ALJ properly found Plaintiff was able to perform his past relevant work as a housekeeper. *See id.* at 6–9. Finally, he objects to the Magistrate Judge's finding that the Appeals Council did not err in failing to weight Plaintiff's new evidence, which he claims was material and related to the time period before the ALJ's decision. *See id.* at 9–11.

I.     **Plaintiff's Bipolar Disorder and Schizoaffective Disorder**

Jackson first objects to the Magistrate Judge's recommended finding that the ALJ properly determined that his bipolar disorder and schizoaffective disorder were not severe impairments. In support of this argument, Plaintiff notes that he "was consistently diagnosed with bipolar disorder and schizoaffective disorder." *Id.* at 2. He also argues that he was assessed with Global Assessment of Functioning ("GAF") scores of 50 on multiple occasions, which he argues indicates he was experiencing "severe symptoms" resulting in serious impairment in his occupational functioning and ability to keep a job. *Id.* (citing American Psychiatric Association, *Diagnostic & Statistic Manual of Mental Health Disorders* (4th ed. rev. 2000)). Plaintiff asserts that the ALJ should have considered the GAF scores since it was relevant evidence, and that the Magistrate Judge improperly adopted the Commissioner's post-hoc rationalization of the ALJ's decision to ignore the GAF scores. *Id.* at 3.

The Defendant, on the other hand, argues that the ALJ's failure to reference the GAF score is not, standing alone, enough to reverse, especially in light of the fact that the ALJ discussed Plaintiff's mental health treatment records at some length. ECF No. 41 at 2. Defendant also argues that the Magistrate Judge's analysis was not a post-hoc rationalization, and was an appropriate

review of whether the ALJ's severity determination was supported by substantial evidence.  *Id.* at 3.

The Court agrees with the Plaintiff that the Magistrate Judge improperly recommended affirming the ALJ's determination that Plaintiff's mental impairments were not severe at Step Two of the sequential evaluation.  Step Two of the sequential analysis requires the ALJ to "consider the severity of [a claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4).  A severe impairment is defined by the regulations as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" means "the abilities and aptitudes necessary to do most jobs."  Examples include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).

Plaintiff bears the burden of demonstrating that he has a severe impairment.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  However, as Plaintiff correctly noted, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal* effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th

Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (internal quotation marks omitted). As the third circuit has explained, the "inquiry is a *de minimi*s screening device to dispose of groundless claims." *McCrea v. Comm'r*, 370 F.3d 357, 360 (3rd Cir. 2004) (citation omitted).

Here the ALJ specifically held that "singly, or in combination," Plaintiff's schizoaffective and bipolar disorders were non-severe impairments, as they did not "cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (R. pp. 30–31). The Court finds that this determination was not supported by substantial evidence. It is undisputed that Plaintiff was repeatedly treated for mental health issues over a period of several years, and diagnosed with both bipolar disorder and schizoaffective disorder. The record indicates that Plaintiff first began receiving treatment for his mental health issues when he presented to Tuomey Hospital Emergency Room in February of 2006, where he was diagnosed with depression with suicidal ideation. (R. pp. 273–75.) He was also assessed with depression at Richland Community Healthcare, where he was seen in April and May of 2009. (R. pp. 354–57.) In December of 2009, Plaintiff presented for assessment at Santee-Wateree Mental Health Center with complaints of depression, anxiety, problems with sleep, audio and visual hallucinations, and paranoid thoughts. (R. p. 360–63.) He also indicated that he could not hold a job and had trouble interacting with others. (R. p. 360–63.) Although the evaluation indicated that Plaintiff was "cooperative and pleasant," he was diagnosed with schizoaffective disorder, which he was repeatedly assessed with during follow up visits. (R. p. 360–63, 367–73.) Later, Plaintiff was diagnosed with bipolar disorder during an inpatient stay at G. Werber Bryan Psychiatric Hospital in June of 2010. (R. pp. 380–81.) The examining physician at that facility indicated that in his most recent bipolar episode, Plaintiff was "depressed with psychotic features." (R. p. 381.) The report from this stay also indicated Plaintiff had recently been admitted to Tuomey Medical Center in May 2010 for

psychological issues, although records from that stay do not appear to be a part of the record. (Tr. 380.)

Therefore, from the record before the Court, it appears Plaintiff was admitted either to a hospital or mental health facility on no less than five occasions for mental health issues. Moreover, he was repeatedly assessed with bipolar disorder and schizoaffective disorder. The ALJ's determination that these conditions were not "severe" is not supported by substantial evidence in light of Plaintiff's long history of problems and Plaintiff's inability to hold a job since February 2008, *see* (R. p. 186.) Substantial evidence does not support a finding that these conditions were only a *slight* abnormality having a "*minimal effect*" on Plaintiff's where it would not interfere with his ability to work. In its brief, Defendant argued that the determination was supported by substantial evidence, noting the ALJ's discussion of Dr. Alexander McDonald's concern about Plaintiff's presentation. *See* (R. pp. 24, 382–82.) Dr. McDonald acknowledged that Plaintiff seemed "morose" to the treatment staff while "upbeat and talkative" with other patients, and that he maintained a neat, clean appearance and displayed an organized thought process. *See* (R. pp. 34, 380–81.) Dr. McDonald also noted that he detected no objective evidence of suicidality or psychosis at any time during Plaintiff's hospital stay. (R. pp. 34, 380-81.) Defendant also noted that the ALJ determined that Plaintiff's allegations about the severity of his symptoms were not entirely credible. *See* (R. pp. 36, 299–300, 313, 381.) The Court reiterates, however, that whether an impairment is "severe" is only a threshold inquiry.

As Plaintiff correctly notes, his GAF scores only serve to further demonstrate that this determination is not supported by substantial evidence. Plaintiff's objections devote extensive discussion to the ALJ's failure to specifically discuss his GAF scores. It is true that, as both Defendant and the Magistrate Judge note, the GAF is no longer included in the most recent edition

of the Diagnostic & Statistic Manual of Mental Health Disorders ("DSM").  *See American Psychiatric Association*, Diagnostic & Statistic Manual of Mental Health Disorders 15 (5th ed. 2013).  However, the Court believes that, in this context, the GAF score is useful because it provides an indication of how significant Plaintiff's schizoaffective and bipolar disorders were at the time of assessment.  Plaintiff received GAF scores of 50 on not just one occasion, but on several occasions during the course of his treatment by Santee-Wateree Mental Health.  *See* (R. pp. 371, 373, 375.)  A GAF score between 41 and 50 may reflect "serious symptoms OR any serious impairment in social, occupational, or school functioning."  American Psychiatric Association, *Diagnostic & Statistic Manual of Mental Health Disorders* 32 (4th ed. rev. 2000) (emphasis in original).  Therefore, Plaintiff's GAF score of 50 certainly supports a determination that his disorders were more than slight abnormalities that only minimally impacted Plaintiff's ability to work.

Based on the evidence presented, there is not "such relevant evidence as a reasonable mind might accept as adequate" to support the conclusion that Plaintiff's schizoaffective and bipolar disorders were not severe impairments.  *See Richardson v. Perales*, 402 U.S. at 401 (internal quotation marks and citations omitted).  Moreover, the Court finds that this was not harmless error.  Error at Step Two can be cured by the ALJ's obligation to consider the combined effects of both severe and non-severe impairments at subsequent steps.  *See* 42 U.S.C. § 423(d)(2)(c); *see also Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989).  However, harmless error only applies where the ALJ would "have reached the same result notwithstanding his initial error."  *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994).  Here, the ALJ did not fully consider the effects of Plaintiff's schizoaffective and bipolar disorders in formulating his residual functional capacity.  *See* (R. pp. 34–37.)  Therefore, the error is not harmless.  *Cf. Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)

(holding that ALJ's step two error was harmless in light of his discussion of the claimant's impairment when assessing the claimant's residual functional capacity). The Court finds that the ALJ's determination that Plaintiff's disorders were not severe influenced his determination of Plaintiff's residual functional capacity at steps four and five. *Cf. Jones ex rel. Jones v. Astrue*, 704 F. Supp. 2d 522, 534 (D.S.C. 2010) ("Further, the Court finds that this error was not harmless because the finding that Claimant's back pain was not severe influenced the ALJ's determination of Claimant's residual functional capacity at steps four and five of the sequential disability evaluation.") The Court does not believe that this is a situation where the ALJ would necessarily "have reached the same result notwithstanding his initial error." *See Mickles*, 29 F.3d at 921.

Accordingly, the Court finds that the decision of the Commissioner should be reversed and remanded, with the determination that the Commissioner should consider Plaintiff's bipolar and schizoaffective disorders as severe impairments at Step Two of the sequential evaluation. The Commissioner should then proceed with the usual sequential evaluation.

## II.     Plaintiff's Remaining Objections

Because the undersigned orders that this case be remanded, Plaintiff's remaining allegations of error are not specifically addressed. As to Plaintiff's objection regarding the claim that the Magistrate Judge erred in finding the ALJ did not abuse his discretion in failing to order an updated consultative exam, this Court has reviewed the arguments *de novo* and finds no basis to overrule the Magistrate Judge's recommended finding.

As to Plaintiff's objection regarding Plaintiff being capable of performing his past relevant work as a housekeeper, again this would also need to be reconsidered in light of the Court's ruling regarding the severe mental impairments.

As to Plaintiff's objection regarding new evidence presented to the Appeals Council, as the case is being remanded, the ALJ should consider this new evidence on remand.

## Conclusion

The Court has thoroughly reviewed the entire record as a whole, including the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's reply to the objections, and applicable law. For the foregoing reasons, other than as to whether the ALJ erred in failing to order an additional consultative exam, the Court respectfully rejects the R & R of the Magistrate Judge. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and the case is **REMANDED** to the Commissioner for further proceedings as set forth herein.

**IT IS SO ORDERED**.

    s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

March 31, 2014
Florence, South Carolina